## C. A. OFFERLE V. THE STATE

Nn. 19749. Delivered June 22, 1938.
On the Merits November 2, 1938.
Rehearing Denied January 11, 1939.

The opinion states the case.

*Sam B. Spence* and *Mike Anglin,* both of Wichita Falls, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is theft of cattle; the punishment, confinement in the penitentiary for two years.

While it appears that notice of appeal was timely given, there is nothing to show that said notice was recorded in the minutes of the court as required by law. This should appear from the certificate of the clerk. Under the circumstances, the appeal must be dismissed. Wheeler v. State, 42 S. W. (2d) 69.

The appeal is dismissed. Appellant is granted fifteen days from this date in which to perfect the record.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON THE MERITS

CHRISTIAN, JUDGE.—The record having been perfected, the appeal is reinstated and the case considered on its merits.

On the 17th of August, 1937, appellant, Carl Dotson and Bill Tidwell drove to Mr. Bridwell's ranch in Archer County and butchered a calf which J. K. Mitchell, foreman of the ranch, had in charge. The calf bore Mr. Bridwell's brand. Appellant testified that Tidwell told him he had a right to take the calf, as Jerome Stone had promised him a calf in payment for work he had done for him. Stone testified that he had promised Tidwell two calves, but stated that he thought Tidwell had gotten them prior to the time he butchered the Bridwell calf. Tidwell had been tried and convicted for the theft of the calf in question on a plea of guilty. The ranch operated by Stone was approximately twelve miles from the Bridwell ranch, where the calf was butchered. Tidwell was familiar with the Stone ranch, having worked there about two years.

Appellant made a voluntary confession, which, omitting the formal parts, reads as follows:

"I left my second hand place around three o'clock yesterday afternoon. Bill Tidwell and Carl Dotson were with me, we were going fishing and hunting. We had gin with us. We went to Archer County. I can't remember how we got to Archer County. I can remember going out Holliday Street but to tell you the exact road that we traveled going to Archer County I can not. We hunted for a while but we did not kill anything. We didn't fish. Bill Tidwell said that we would go down to the ranch and get a cow. Carl Dotson was driving the car. We did not have a trailer. I don't know who owned the car. Bill Tidwell shot a cow or a calf; I don't know whether it was a cow or a calf. I guess it was a two-year-old; he used my gun, a 410 shotgun. I was in the car when Bill Tidwell shot the cow. I don't know who owned the ranch where Bill shot the cow. They put the cow in the car, in the back seat. It must have been an hour or so before sundown that we killed this calf. Then we started back to town.

"Bill said that we would go to his house and dress the calf, I said, 'No, we will go to my house and dress the calf.' Then we drove to my home on Lucille Street and dressed the calf.

"I dug a hole and put the hide and the fat in this hole and then put dirt over this hole. I put the tail in the place where I burn my trash and covered it up to keep the flies away. I put a quarter in my ice box. Then we got a taxi and came to town and got my car. Carl Dotson left my house. He was pretty drunk. Then we went back out to my house. We cut this calf up some before we went after my car and then when we got back we got a saw and a knife and finished dressing the

calf. Bill said that the hide wasn't in good shape that it was cut up pretty bad and that we couldn't sell it, so I dug the hole and put it in the hole. Then we carried some of the meat to Bill Tidwell's house, I guess it was his house. Then we put some meat in the trunk of my car and drove down town. Bill Tidwell tried to sell some of this meat in Roy's Cafe on Eighth Street. When we came to town after my car I went to my store and Bill went in Roy's Cafe and told them that he would bring them some meat and then when we went back after the meat we carried some of it to Roy's Cafe. I went in the cafe with Bill Tidwell.

"Bill Tidwell carried the meat from my car to the cafe. I know that Bill Tidwell did not own any ranch. I did not object when the officers searched my car. I told them that they could search my car if they wanted to. I didn't object to the officers searching my home. I told the officers that I had been fishing and hunting when Wilson came to the car. I have told you all that I know about killing this calf."

Bill of exception No. 1 shows that appellant's request that the district attorney be required to place Tidwell upon the witness stand was refused. We quote from the bill of exception, as follows:

"Be it further remembered that in arguing the case to the jury, Mike Anglin, a counsel for the defendant, told the jury that he would explain why the state did not put Bill Tidwell on the stand, whereupon the trial court immediately stopped counsel for defendant and did not permit counsel for defendant to make any reference whatsoever to the failure of the State to place Bill Tidwell upon the witness stand, whereupon, counsel for the defendant made the following objection, to-wit:

" 'Comes now the defendant and objects and excepts to the ruling of the court in refusing to permit counsel for the defendant to comment upon the failure of the State to use in evidence as a witness the accomplice, Bill Tidwell, who is an accomplice and co-defendant of C. A. Offerle, the defendant in this case, for the reason that the said co-defendant, Bill Tidwell, told the officers and it's in the record, that he had some calves that had belonged to Jerome Stone, and had gotten them from Jerome Stone; that he told this defendant he was going to kill one of his calves, and for the further reason the said Bill Tidwell is now confined in the Archer County jail here at the courthouse at the place of this trial, and the State upon the request and demand of the defendant had refused to tender him as a witness for the defendant, and because the defendant has no right to offer him,

in view of the evidence undisputed in the record, showing that Bill Tidwell did make such statements, the defendant offers to discuss the reasons for the State failing to put him on the witness stand, and objects and excepts to the ruling of the court in refusing to permit counsel for the defendant to discuss his failure to testify, and the failure of the State to tender him as a witness in view of the record in this case, and let it be further shown that there are numerous facts in this record which could only be corroborated or disapproved by the co-defendant, W. F. Tidwell, and that the only manner in which the defendant can reasonably argue his side of this issue is to comment upon the absence of the testimony of the witness Tidwell, and we except, of course, to the court's ruling in not permitting us to comment upon his failure to testify, and the State's failure to put the said Bill Tidwell on the witness stand in this case.' ".

The opinion is expressed that the bill of exception reflects reversible error. Tidwell would have been competent as a witness for the State, but not for the appellant. He was in jail in the County of Archer, where the trial proceeded, and was therefore available as a witness. He had entered a plea of guilty under an indictment charging him with the theft of the animal in question. He had knowledge of facts tending to a determination of the issues of the case. According to the testimony, he had stated to the officers that he told appellant the alleged stolen animal belonged to him (Tidwell). Appellant's affirmative defense was that he believed Tidwell's statement to the effect that the animal belonged to him. Tidwell having admitted that he committed the theft, and being available as a witness for the State, it would have been proper for counsel for appellant to direct the jury's attention to the fact that he had not testified for the State, and in a measure assert that the failure of the State to call the witness was indicative of the fact that he would adhere to his statement that he had told appellant the calf belonged to him. In short, under the evidence, the assertion could have been made that the failure of the district attorney to call said witness indicated the existence of circumstances which would have exonerated the appellant. In Bowlin v. State, 248 S. W. 396, we said: "It is always permissible for counsel for either side to comment on the failure of the opposite side to call witnesses which may throw light upon the transaction under investigation. * * *"

The court charged on the law of principals, and submitted appellant's affirmative defense in language as follows:

"7. If you do not so find, or if you have a reasonable doubt

thereof, or if you find and believe from the evidence that the defendant at the time he took such head of cattle, if he did take it, believed the same to be the property of W. F. (Bill) Tidwell, or if you have a reasonable doubt thereof, then you will acquit the defendant and say by your verdict not guilty."

We think appellant's affirmative defense was adequately submitted. It was appellant's version that he believed Tidwell owned the calf.

The judgment is reversed and the cause remanded.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

## ON MOTION FOR REHEARING.

KRUEGER, JUDGE.—The State, through the District Attorney of Archer County, has filed a motion for rehearing, contending that we erred in our original opinion by holding that a defendant has a right to comment on the State's failure to use a co-defendant as a witness in behalf of the State. It is asserted that in civil cases the failure of one of the parties to an action to testify raises a strong presumption against him, citing McCullough v. McCullough, 20 S. W. (2d), 224, and other cases. The decisions in these cases are sound and in accord with our original opinion in this case, since our holding was that the State, in a criminal action, by failing to use a co-defendant as a witness, raised a presumption against itself which might be the subject of argument on the part of the accused.

It is also contended that the rule laid down is in conflict with the rule that the failure of a defendant in a criminal action to testify in his own behalf shall not be taken as a circumstance against him, or made the basis of an inference of his guilt. This is so by virtue of Art. 710 C. C. P. At common law, a defendant was not permitted to testify in his own behalf and the State could not, therefore, comment thereon, since there was nothing to discuss. However by Legislative action in this State, a defendant is permitted to testify in his own behalf and in case he declines to do so, the statute says that such fact shall not be alluded to or discussed by the State. However, we fail to see how this statute has any relation to the question under discussion.

Believing the case was properly disposed of on its merits, the State's motion for a rehearing is overruled.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.